BEARDMORE, ET UX. *v.* T. D. BURGESS COMPANY, INC., ET AL.

[No. 76, September Term, 1966.]

*Decided February 9, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Karl G. Feissner,* with whom were *Alpern & Feissner* on the brief, for appellants.

*John W. Mitchell,* with whom were *Mitchell, Clagett & Euwer,* and *Albert B. Brault* and *Brault, Scott & Brault* on the brief, for appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

In a tort action of deceit based on an alleged fraudulent misrepresentation in the sale of a house and lot that the house had a public sewer connection, the court below directed a verdict for the defendant-appellees on the ground that the plaintiff-appellants had not offered evidence to show that the fair market value of the property on the date of purchase, without

the connection, was less than the contract price and that evidence as to the cost of providing the connection was inadmissible. We disagree.

The appellants brought an action in the Circuit Court for Prince George's County against the appellees, the seller of the property, their brokers and their agent, and a bonding company. The counts of the action based on tort alleged that the appellees falsely and fraudulently represented to the appellants that the property had city water and sewer connections. Other counts were based on alleged breach of a warranty in the contract but in the view we take of the case, we do not reach the questions raised by those counts and the rulings thereon.

At the trial of the case, before a jury, by agreement between counsel, the plaintiff-appellants adduced as their first witness a registered plumber, to testify as to the cost of connecting the property to a public sewer system. The appellees objected on the ground that if the appellants proved deceit, the only damages to which they would be entitled would be the difference between the price paid and the fair market value of the property, as it actually was, at the time of the sale. The appellants admitted there was no evidence as to any such difference in value, but proffered to show, by the plumber's testimony, that the cost of connecting the property to the sewer system would be some $600. The trial court sustained the objection and on motion duly made granted a directed verdict on behalf of all the appellees.

In the oral argument on the appeal from the judgment on the directed verdict, counsel for the respective parties agreed that the purchase price of the house and lot was $15,000; that the property had water but no sewer connections; that, while the appellants have been using the septic tank on the property they will be required, by valid governmental regulation, to connect the property with a municipal sewer system in about 18 months from the date of its purchase; and that the property, without the sewer connection, had a fair market value at the time of purchase at least equal to the purchase price. The appellees deny the alleged fraudulent misrepresentation and deceit, but, for the purposes of determining the legal question before us, we must assume that the deceit has been proved.

The general measure of damages which has been followed in Maryland in tort actions where fraud or misrepresentation is alleged, is the difference between the amount of the purchase price the buyer has paid and the actual value of the property on the date it was sold. *Dassing v. Fred Frederick Motors, Inc.,* 240 Md. 621, 624, 214 A. 2d 925 (1965) and cases therein cited. This rule of damages is often referred to as the "out of pocket" doctrine. As Judge Marbury said, for the Court, in that case, Maryland, unlike many other jurisdictions, has not adopted the "benefit of the bargain" test for the determination of damages in deceit cases. Under that test, the damages are the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true.

The fact that Maryland has followed the "out of pocket" rule, however, does not of itself answer the question before us on the particular facts of this case. The aim of compensation in tort cases of this nature is to put the buyer, as nearly as practicable, in the position he would have been had he not been defrauded. Here, the property is worth as much or more than the price he paid for it, even without the sewer connection. If, under the general rule which has been followed in this State, the appellants could recover only the difference between the purchase price and the actual value of the property on the date it was sold, the appellants, as the trial court ruled, can recover nothing, although, whether they wish to do so or not, they are required by municipal law to connect the property with the sewer system at their expense. They would be out of pocket by this amount, and the appellees, the assumed wrongdoers, would be relieved from paying compensation. Such a result, in our opinion, would be fundamentally unjust. Nor, we think, is that result required even under the general Maryland rule.

In the search for justice, based on the needs and nature of men and their customs, few legal principles are absolutes. In the field of damages, in suits for specific performance, the law has developed, from the inflexible doctrine that a court of equity will grant only that particular relief, to an acceptance of the principle that the chancellor, in a proper case, as ancillary to a decree of specific performance, may decree compensation or

damages. *Rocks v. Brosius,* 241 Md. 612, 652-54, 217 A. 2d 531 (1966) and authorities therein cited. In condemnation proceedings, in a case of a partial taking, the value of what is taken is ordinarily to be determined by the difference between the fair market value of the whole tract before the taking and the fair market value of what is left thereafter, but when the partial taking affects the access to the remaining property, evidence as to the cost of subsequently securing adequate access is admissible as an alternative to decreased market value. *Big Pool Holstein Farms, Inc. v. State Roads Comm'n,* 245 Md. 108, 225 A. 2d 283 (1967).

Restatement, *Torts* § 549 states the measure of damages for fraudulent misrepresentations as follows:

> "The measure of damages which the recipient of a fraudulent misrepresentation is entitled to recover from its maker as damages under the rule stated in § 525 is the pecuniary loss which results from the falsity of the matter misrepresented, including
> (a) the difference between the value of the thing bought, sold or exchanged and its purchase price or the value of the thing exchanged for it, and
> (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the truth of the representation."

The consequential damages suffered as a result of the purchaser's reliance upon the truth of the representation, under the Restatement, are considered as an additional, independent loss.

*McCormick, Damages* § 122 (1935), states the rule as follows:

> "Under accepted theory, the person defrauded is not always limited to the direct damage, that is, to compensation based on the difference between real and represented value or between what was given and what was received. We have seen that necessary expense may sometimes be allowed in addition."

In *Spargnapani v. Wright,* 110 A. 2d 82, 85 (D. C. Mun. App. 1954), the purchasers of a house sued the vendor and broker for a fraudulent misrepresentation with respect to the

functioning of a heating plant. On appeal, the court found that the defendants were answerable in damages to the plaintiffs, holding as follows:

> "There is a dispute between the parties as to the proper measure of damages. Defendants seem to contend that compensation should be on the basis of the difference between the price paid for the house itself and its depreciated market value resulting from the discovered defect. That is a test frequently employed, and one we have in some circumstances approved. But it is not the only or inevitable test. We think it would be just as wise and proper in this case to take the direct and simple approach, and award damages on the basis of the actual cost of replacing the defective boiler * * *"

There are similar holdings under the "out of pocket" rule in Kentucky and Minnesota. *Nunn v. Howard,* 216 Ky. 685, 288 S. W. 678 (1926), where the cost of drilling a well was allowed when there was a fraudulent representation that the well on the property purchased was sufficient; *Shane v. Jacobson,* 136 Minn. 386, 162 N. W. 472 (1917), in which the deceit consisted of a statement that a portion of the farm sold was tiled for drainage, when it was not, and the court held that the purchaser's cost of placing the tiles was a proper measure of damage.

In the present case, the amount which the appellants were required to spend for the sewer connection in effect represented a concealed addition to the original purchase price. The appellants are out of pocket because of the assumed fraudulent representation of the appellees by the amount which they are required to pay. Whatever general rule of damages in deceit cases is followed, we think that, under the circumstances of this case, the appellants, if they prove the deceit, are entitled to recover the amount of the expenditure.

> *Judgment reversed; case remanded for further proceedings consonant with the above opinion; costs to be paid by appellees.*