WILLIAM S. ELLIS, JR., ET AL. *v.*
WILLIAM F. CROCKETT, ET AL.

No. 4706.

FEBRUARY 25, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND
CIRCUIT JUDGE KING ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY LEVINSON, J.

The seventeen-page complaint in this case is prolix and ambiguous, sometimes contradictory, and often difficult to comprehend. Although there are numerous allegations of

fraud, most of which are stated with particularity as required by the Hawaii Rules of Civil Procedure, Rule 9(b), the complaint as a whole is a gross violation of H.R.C.P., Rule 8(e)(1) which requires that "[e]ach averment of a pleading shall be simple, concise, and direct." Both rules should be adhered to. The complaint purports to allege five "causes of action," an outdated term not used in the Hawaii Rules of Civil Procedure which have been in effect in this jurisdiction since June 14, 1954.

The facts alleged in the complaint appear to be as set forth below:

The controversy developed from the sale of a parcel of land by defendants-appellees Lyman and Katsuyo Harada to the plaintiffs-appellants other than William S. Ellis, Jr., on December 1, 1960. The interest of William S. Ellis, Jr. is alleged to result from his being a creditor of the other plaintiffs-appellants and his having an equitable lien on the land. Prior to the consummation of the transaction, the vendors "represented" to the plaintiffs that they would be lenient as to payment of principal and interest due under the notes and mortgage for the unpaid balance of the purchase price, if the plaintiffs' circumstances so required. They also "represented" that they would cooperate in an attempt to resolve any problems which might develop. The eventual threats of foreclosure and the ultimate foreclosure are alleged to have been in "breach" of those "representations."

Shortly after the consummation of the sale, the notes and mortgage were assigned to the Bank of Hawaii. Defendant-appellee Balthis, then an officer of the Bank, notified the plaintiffs of the assignment; but he refused, upon inquiry by plaintiff William S. Ellis, Jr., to divulge the terms of the assignment as between the vendors and the Bank.

One of the two notes for the unpaid balance of the purchase price was paid. However, as time went on, the purchasers became delinquent in making payments due on the remaining note. On several occasions, defendant-appellee Crockett, the attorney for the vendors, demanded full payment of the note pursuant to an acceleration clause and informed the plaintiffs that a foreclosure would follow if the delinquency continued. On these occasions, the plaintiffs were told by Crockett that the vendors were then the owners of the remaining note and the mortgage although at such times the Bank of Hawaii had not as yet reassigned them to the vendors. These threats were alleged to have been made with the "knowledge and consent" of defendant Balthis.

On one occasion, Crockett secured a purported reassignment of the remaining note and the mortgage, an event which the plaintiffs claim never actually occurred. This was allegedly done for the sole purpose of instigating litigation. One month later, Crockett demanded full payment of the principal and interest to be made within five days after the date of the demand; the demand was alleged to be in breach of the acceleration clause, which provided for thirty days' notice.

There is one other defendant-appellee as yet unmentioned. He is Stephen T. Harada, the son of the vendors. The plaintiffs claim that he and all the other defendants "falsely and fraudulently" failed to disclose (1) who actually held the note and mortgage on the day Crockett demanded the accelerated payment, and (2) who had instructed Crockett to initiate the foreclosure proceedings which followed.

The foreclosure proceeding was instituted by the vendors, and it resulted in the granting of summary judgment in favor of the vendors. That judgment was appealed and was affirmed by this court in an unreported opinion.

It is now claimed that some of the sworn statements made by one or more of the present defendants, except S. Harada, and which were relied upon by the court in the granting of summary judgment were false and made with the intent to deceive the court.

The complaint in this case was filed on September 3, 1966. On September 21, 1966, the defendants moved for dismissal of the entire action pursuant to Rule 12(b)(6) on the ground that the complaint failed to state a claim upon which relief could be granted. The motion was orally granted on February 3, 1967, at which time the plaintiffs asked for permission to amend the complaint. The permission was summarily denied. On February 9, 1967, an order of dismissal without leave to amend was filed. Subsequent motions for rehearing and for an amended order of dismissal were denied, and an appeal was taken to this court.

The only questions before us that we consider necessary to answer are: (1) whether the motion to dismiss was properly granted, and (2) if so, whether, under H.R.C.P., Rule 15(a), the plaintiffs had a right to file an amended complaint after the trial court orally granted the motion to dismiss and before the order was filed. Other specifications of error, except the specification numbered 4, which is premature for decision, are without merit.

1. *The Granting of the Motion to Dismiss*

We agree with the lower court that none of the alleged "causes of action" states a claim on which relief may be granted.

A. "First Causes of Action"

(1) The pleadings

The alleged "first cause of action" was against all the defendants for deceit, conspiracy to deceive, instigation of litigation, and conspiracy to instigate litigation, cul-

minating in the filing of the mortgage foreclosure action. It is alleged that the acts of the defendants resulted in "grievous mental suffering and substantial prejudice, harm, and damage, which Plaintiffs estimate and allege amounts to the sum of $100,000."

The claim based upon instigation of litigation and a conspiracy to instigate litigation is without merit. Appellants have cited no authority in this jurisdiction supporting a claim based on such grounds. Nor have they presented any sufficient reason why we should recognize such a right. *See Fergerstrom* v. *Hawaiian Ocean View Estates,* 50 Haw. 374, 441 P.2d 141 (1968).

Before discussing the deceit claim, we must consider whether the claim for damages complies with H.R.C.P., Rule 9 (g) which requires items of special damage to be stated specifically. The law divides damages into two broad categories—*general* and *special.* General damages are said to encompass all the damages which naturally and necessarily result from a legal wrong done. *Augustine v. Southern Bell Telephone & Telegraph Co.,* 91 So. 2d 320, 323 (Fla. 1956). Such damages follow by implication of law upon proof of a wrong. On the other hand, special damages are considered to be the natural but not the necessary result of an alleged wrong and are such that they do not follow by implication of law merely upon proof of a wrong. *Id.* In other words, special damages do not arise solely from the wrongful act itself, but rather depend on the circumstances peculiar to the infliction of each particular injury. *Myers* v. *Stephens,* 233 Cal. App. 2d 104, 120, 43 Cal. Rptr. 420, 433 (1965). These widely held definitions are not too helpful since there are relatively few types of damage suffered which are "necessary" in the sense of being as foreordained to occur from the wrong as night follows day. A clearer description of what the distinctions are might be stated as follows: *general damages* are those

damages which usually accompany the kind of wrong-doing alleged in the complaint so that the mere allegation of the wrong gives sufficient notice to the opposite party of the kind of damage that will be claimed at trial; *special damages* are those damages which are of a relatively unusual kind and which, without specific notice to the adversary, may not be understood to be part of the claim. *McCormick on Damages* at 34 (1935); *Restatement of Torts* § 904 (1939). This manner of explanation effectuates the purpose behind H.R.C.P., Rule 9(g) which, in requiring items of special damage to be specifically stated, provides for notice to the adversary of the nature of the claim to be pressed at trial and avoids surprise. 1A Barron and Holtzoff, *Federal Practice and Procedure* § 308 at 238 (1960).

Applying Rule 9(g) to this case, if we were to assume, without deciding, that the various allegations properly set out a claim for deceit, it is not at all self-evident what type of damage claim would be asserted at trial in order to give substance to the general claim of "grievous mental suffering and substantial prejudice, harm and damage" as set out in the complaint. Taking, for example, the claimed misrepresentations of the attitude of the vendors prior to the consummation of the sale, it is apparent that they did not agree *not* to foreclose in the event of default. The threats of foreclosure (which of themselves might be seen as giving one more chance to the plaintiffs to redeem themselves) as well as the ultimate foreclosure were not legal injuries; they were exactly what the plaintiffs bargained for if they defaulted. Also, the threats to foreclose as well as the "fraudulent failure to disclose" who at those times owned the note and mortgage, even if true, were only calculated to spur the plaintiffs to make the payments owing. Surely there is no legal injury when a person is induced by false representations to do an act which it is

his duty to do. The damages, if any, resulting from these threats and the foreclosure must, therefore, be *special*. If there are any special damages, they must be specifically stated pursuant to Rule 9(g). While the causal connection between the damages and the deceit need not be alleged with as great precision as might be possible or desirable, the complaint, at a minimum, must adequately notify both the appellee and the court as to the nature of the claimed damages. *Schoen* v. *Washington Post*, 246 F.2d 670, 672 (D.C. Cir. 1957). The only item of damage in the complaint which is specifically stated is "mental suffering." As will be shown below, mental suffering can play no role in the recovery on a claim based upon deceit.

In order to have a claim based on deceit, the plaintiff must have suffered substantial actual damage, not nominal or speculative. Prosser, *Law of Torts* at 748 (3d ed. 1964). The courts have often expressed this requirement in terms of *pecuniary* damage, *Hanlon* v. *Macfadden Publications, Inc.*, 302 N.Y. 502, 511, 99 N.E.2d 546, 551 (1951), *Toho Bussan Kaisha, Ltd.* v. *American President Lines, Ltd.*, 265 F.2d 418, 421 (2d Cir. 1959), as does the *Restatement of Torts* § 549 (1938).[1] The aim of compensation in deceit cases is to put the plaintiff in the position he would have been had he not been defrauded. *Beardmore* v. *T. D. Burgess Co.*, 245 Md. 387, 226 A.2d 329 (1967). There may be no recovery for mental anguish and humiliation not intentionally inflicted. *Harsche* v. *Czyz*, 157 Neb. 699, 710, 61 N.W.2d 265, 272 (1953); *Restatement (Second) of Torts* § 47 (1965).

Pecuniary damages, being narrow in scope, are those damages (either general or special) which can be accurately calculated in monetary terms such as loss of wages

---

[1] The tentative draft of the *Restatement (Second) of Torts* carries forward the requirement of pecuniary damages. *See id.* § 549 (Tent. Draft No. 11, 1965).

and cost of medical expenses. In fraud or deceit cases, the measure of pecuniary damages is usually confined to either the "out-of-pocket" loss (*see, e.g., Beardmore* v. *T. D. Burgess Co.,* 245 Md. 387, 226 A.2d 329 (1967)) or the "benefit of the bargain" (difference between the actual value at time property is sold and the value it would have had if the representations had been true) (*see, e.g., McInnis & Co.* v. *Western Tractor and Equip. Co.,* 67 Wash. 2d 965, 967, 410 P.2d 908, 910 (1966). Some courts have adopted a compromise position wherein the "benefit of the bargain" may be recovered if it can be adequately proved, but if not, only the out-of-pocket loss is recoverable. (*See, e.g., Rice* v. *Price,* 340 Mass. 502, 164 N.E.2d 891 (1960)). We do not reach the question of which measure is applicable in this case since the plaintiffs do not appear to have alleged any pecuniary loss from the alleged misrepresentations.

Even if the plaintiffs had properly alleged and were prepared to prove pecuniary damage, they would still have other obstacles to overcome in order to plead the "first cause of action" properly. Since the nature of pecuniary damage is such that it is capable of being ascertained by calculation, it should have been raised by way of counterclaim pursuant to the compulsory counterclaim provisions of H.R.C.P., Rule 13(a)[2] in the original foreclosure action brought by Lyman and Katsuyo Harada. Issues which

---

[2] H.R.C.P., Rule 13(a) reads as follows:

*Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if all of the following conditions exist: (1) the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; (2) the claim does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; (3) the claim was not at the time the action was commenced the subject of another pending action; and (4) the claim consists of a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation.

must be raised by way of compulsory counterclaim may not thereafter be raised in an independent action against the same parties who were plaintiffs in the former suit. The compulsory counterclaim requirement of Rule 13(a) was "designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint."[3] *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60 (1962). Thus under no circumstances could an action for deceit be brought against Lyman and Katsuyo Harada under the facts in this case. As to Crockett, who it is admitted by the plaintiffs in their complaint was acting as agent for the Haradas throughout all of the transactions involved in this case, we hold that he could not be sued independently if a suit against his principal is now barred because of the compulsory counterclaim requirements. *See Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 119, 134 N.E.2d 97, 99 (1956).

As against S. Harada and Balthis, the complaint alleges a fraudulent failure to disclose certain facts. What is missing, however, are allegations showing that there was any duty on the part of S. Harada or Balthis to disclose anything. *See Restatement of Torts* § 551 (1938) and *Restatement (Second) of Torts* § 551 (Tent. Draft No. 11, 1965).

### (2) Collateral Estoppel

Even if the complaint were sufficient in every respect and the plaintiffs were prepared to prove the necessary

---

[3] Although the Hawaii compulsory counterclaim provision is narrower in scope than its federal counterpart, the rationale given above is equally applicable to those situations which are governed by H.R.C.P., Rule 13(a).

elements for a deceit action, some of the issues raised would be barred by an important aspect of *res judicata,* the doctrine of collateral estoppel.

The plaintiffs assert that *res judicata,* or collateral estoppel, being by nature affirmative defenses, cannot be raised by a motion to dismiss under Rule 12(b)(6). However, the preponderance of federal cases permit the defense to be raised in this way. *See, e.g., Southard* v. *Southard,* 305 F.2d 730, 732 (2d Cir. 1962); *Thomas* v. *Consolidation Coal Co.,* 380 F.2d 69 (4th Cir. 1967), *cert. denied,* 389 U.S. 1004 (1968); *Larter & Sons* v. *Dinkler Hotels Co.,* 199 F.2d 854 (5th Cir. 1952); *Scholla* v. *Scholla,* 201 F.2d 211 (D.C. Cir. 1953), *cert. denied,* 345 U.S. 966 (1953). We hold that where collateral estoppel appears from the face of the complaint or from the taking of judicial notice or prior interrelated proceedings which are alluded to in the complaint, such defense may be raised by a motion to dismiss under H.R.C.P., Rule 12(b)(6).

The doctrine of *res judicata* basically provides that "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." *In re Bishop Estate,* 36 Haw. 403, 416 (1943).

Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. *Yuen* v. *London Guarantee and Accident Co.,* 40 Haw. 213, 223 (1953); *Henderson* v. *Pence,* 50 Haw. 162, 163, 434 P.2d 309, 310 (1967). Collateral estoppel also precludes reliti-

gation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue. *See Bernhardt* v. *Bank of America Nat'l Trust and Savings Ass'n.,* 19 Cal. 2d 807, 122 P.2d 892 (1942); *Homeowners Federal Savings & Loan v. Northeast Fire & Marine Ins. Co.,* Mass. 238 N.E.2d 55 (1968).[4]

The policy reasons underlying both *res judicata* and collateral estoppel are several. The public interest staunchly permits every litigant to have an opportunity to try his case on the merits; but it also requires that he be limited to one such opportunity. Furthermore, public reliance upon judicial pronouncements requires that what has been finally determined by competent tribunals shall be accepted as undeniable legal truth. Its legal efficacy is not to be undermined. Also, these doctrines tend "to eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results." *Developments in the Law—Res Judicata,* 65 Harv. L. Rev. 818, 820 (1952).

The claim before us today is clearly not the same claim for which relief was sought in the prior foreclosure case. In the case now before us, the parties are cast in different roles as plaintiff and defendant from those they occupied in the prior case. Also the legal consequences of a successful completion of the litigation would be different.

Since this is a different claim, the only way the present plaintiffs may be barred is through collateral estoppel.

---

[4] Most of the decided cases on this point have involved plaintiffs who, having lost in a prior suit against one defendant, are thereafter barred from bringing a suit against another defendant based upon the same facts. However, we find the reasoning in those cases equally compelling to bar a person who, as a defendant, raised and unsuccessfully litigated a defense in a prior suit, and later, as a plaintiff, brings a suit against another party on a claim based upon the same facts which were found not to exist in support of the defense in the prior suit.

Applying the above-described rules, the present plaintiffs are barred as to any claim they may assert against any of the defendants with respect to issues actually litigated between the persons who were parties in the foreclosure suit.

Viewing the court record in the foreclosure case, it is apparent that the question whether there had been an actual reassignment of the note and mortgage from the Bank was raised by the persons who were defendants in that case. It was answered in the affirmative. The present plaintiffs are now precluded from litigating the fact of reassignment or any claim that would depend upon a finding that no reassignment had occurred.

Although the tort of "conspiracy" has not been clearly defined, it is clear that there can be no civil claim based upon a conspiracy alone. *Corris* v. *White*, 29 App. Div. 2d 470, 289 N.Y.S.2d 371, 374 (1968). Since the complaint in this case has not set forth any actionable claim based upon deceit, there can be no claim against any alleged joint tortfeasor based solely upon conspiracy to deceive.

### B. "Second Cause of Action"

The "second cause of action" is against Lyman and Katsuyo Harada for rescission and in tort for damages for deceit.

The rescission action is barred because the court granted the foreclosure in the prior suit, thereby deciding all issues relating to the validity of the mortgage instrument in favor of Lyman and Katsuyo Harada. The issue underlying that judgment may not be collaterally attacked.

With respect to the deceit action, the plaintiffs are barred from the start. The discussion relating to the need for an allegation of special damage, the need to overcome the compulsory counterclaim requirement of Rule 13(a), and the preclusion of the present plaintiffs from reliti-

gating questions which were raised in the prior action, are all applicable to this portion of the "second cause of action."

### C. "Third Cause of Action"

The "third cause of action" seeks damages from Lyman and Katsuyo Harada for a breach of the acceleration clause in the note.

This precise point was raised as a "Fourth Defense" to the original foreclosure action. Since the foreclosure was granted in favor of the Haradas, the court must be deemed to have decided that this defense had no merit. The present plaintiffs are therefore barred from relitigating this question because of collateral estoppel.

### D. "Fourth Cause of Action"

The "fourth cause of action" seeks damages from Stephen Harada and Crockett for inducing the alleged breach of the acceleration clause of the note.

In order to recover on this basis, it is essential that the plaintiffs prove, among other things, that the Haradas did in fact fail to comply with the acceleration clause. The claim may not succeed if there was no such failure. As mentioned above, the plaintiffs had a full opportunity to prove such a breach in the foreclosure action. The court in that case found no breach. Therefore, the principle of collateral estoppel precludes the relitigation of that issue. *Israel* v. *Wood Dolson Co.,* 1 N.Y.2d 116, 120, 134 N.E.2d 97, 99 (1956).

### E. "Fifth Cause of Action"

The "fifth cause of action" alleges that one or more of the defendants except S. Harada made false and fraudulent representations to the court trying the foreclosure action as to the circumstances of the preparation and exe-

cution of the cancellation of the mortgage assignment. The plaintiffs further claim that the representations were made with the intent to deceive the court and that the summary judgment granted to the Haradas in the foreclosure action was the result of this fraud. The plaintiffs pray that the summary judgment be vacated.

H.R.C.P., Rule 60(b) provides that a court may entertain an independent action to relieve a party from a judgment because of a fraud upon the court. Rule 9(b) provides that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As prolix as the complaint is, the plaintiffs have not shown with particularity who made the false representations to the court, what the substance of the representations was, and what the plaintiffs believe to be the true facts. Therefore, this alleged "cause of action" is defectively stated.

2. *The Right to Amend*

The trial court erred in refusing to permit the complaint to be amended and we, therefore, remand the case to permit the amendment. We decline to speculate as to whether an amended complaint will be legally sufficient. It would be inappropriate for us to evaluate possible amendments not yet considered by the trial court.

Before embarking upon the procedural path leading to the result we reach, it is essential that there be a clear understanding of the nature of an order of dismissal. An order dismissing a complaint in its entirety is a judgment denying all relief to the plaintiff whose complaint is being dismissed. Because the *order* dismissing the entire case is in fact a *judgment,* it is governed by the Hawaii Rules of Civil Procedure applicable to judgments. Thus, for example, H.R.C.P., Rule 58 providing that the judgment is not effective until filed or entered is equally applicable to orders dismissing a case. Likewise, the time limitations

for the entry of judgment for purposes of appeal under Rule 73 and the requirement for notice upon entry of judgment pursuant to Rule 77(d) are applicable to such an order.

We hold that the appellants were entitled to file an amended complaint as a matter of right. H.R.C.P., Rule 15(a) provides that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . ." As the defendants admit, a motion to dismiss is not a "responsive pleading" within the meaning of the rule. *Kelly* v. *Delaware River Joint Commission,* 187 F.2d 93, 94 (3d Cir. 1951), *Breier* v. *Northern California Bowling Proprietors' Assn.,* 316 F.2d 787, 789 (9th Cir. 1963). Therefore, the mere service of the motion for dismissal cannot terminate the right to amend.

Since the granting of an order of dismissal does not become effective until entered pursuant to H.R.C.P., Rule 58 as indicated above, the oral granting of the motion cannot terminate the right to amend once as a matter of course. At the time the motion for dismissal was orally granted in this case, the judge was prohibited by Rule 15(a) from denying permission to file an amended complaint. Even though a specific request for leave to amend was not necessary, the judge had no discretion to refuse such leave when it was in fact requested. Such refusal was reversible error.

The defendants contend that the plaintiffs should have submitted a proposed amended complaint or given the court notice of what form the new complaint would take. However, no authority has been cited, and we have found none, imposing such a requirement in any case where the plaintiff is entitled to amend his complaint once as a matter of course.

Our holding is consistent with the overall purpose of the Federal Rules of Civil Procedure upon which the

Hawaii Rules were patterned. We deem the interpretation of the counterpart Federal Rules to be highly persuasive upon this court in the construction of our Rules, *Harada* v. *Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380. Justice Black has pointed out that the Rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley* v. *Gibson*, 355 U.S. 41, 48 (1957). Moreover, H.R.C.P., Rule 1 itself provides that the Rules are to "be construed to secure the just, speedy, and inexpensive determination of every action."

We do not reach the question whether the filing of an order dismissing an action prior to a request for leave to amend would have terminated the absolute right to amend without leave.

Judgment will be entered vacating the order of dismissal of the circuit court and remanding the cause to the circuit court with leave granted to appellants to amend their complaint within 20 days from the date of the entry of judgment on appeal.

*Ralph E. Corey* for plaintiffs-appellants except Ellis.

*William S. Ellis, Jr.*, plaintiff-appellant pro se.

*William F. Crockett* (*Crockett & Crockett*) for defendants-appellees.