STATE SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellant on Count I, Appellee and Cross-Appellant on Count II, v. RALPH E. COREY and ROBERT M. KIMBROUGH, Defendants-Appellees on Count I, Appellants and Cross-Appellees on Count II, and WALLACE C. S. YOUNG, Defendant-Appellee on Count I, Appellant on the Cross-Claim in Count I

*and*

RALPH E. COREY and ROBERT M. KIMBROUGH, Third-Party Plaintiffs, v. BETTER BUILT HAWAII, LTD., Third-Party Defendant

No. 5021

September 9, 1971

RICHARDSON, C.J., ABE AND KOBAYASHI, JJ., AND CIRCUIT JUDGE HAWKINS IN PLACE OF MARUMOTO, J., DISQUALIFIED, AND CIRCUIT JUDGE M. DOI IN PLACE OF LEVINSON, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal is the result of a suit initiated by State Savings & Loan Association (hereinafter State Savings or plaintiff) against Robert M. Kimbrough (hereinafter Kimbrough), Ralph E. Corey (hereinafter Corey) and Wallace C. S. Young (hereinafter Young) (hereinafter collectively called defendants) for a mortgage loan made by State Savings in favor of Kauaian Development Company, Inc. (hereinafter Kauaian Development).

In Count I of the complaint, State Savings alleged that though Kimbrough, Corey and Young were personally obligated through a written undertaking to discharge certain mechanic's liens of Kauai Commercial Company, Limited (hereinafter Kauai Commercial), they failed to discharge said liens. In Count II, State Savings alleged fraud, encompassing representations made to State Savings by Kimbrough, Corey and Young in their procurement of a mortgage loan from State Savings for Kauaian Development.

Young instituted a cross-claim against Kimbrough and Corey, claiming that if any judgment is obtained against Young then Kimbrough and Corey be held liable for the full amount of the judgment.

The following jury verdicts are pertinent in this appeal:

1. On Count I, in favor of State Savings and against Kimbrough, Corey and Young;

2. In regard to Young's cross-claim in Count I, in favor of Kimbrough and Corey and against Young;

3. On Count II, in favor of State Savings and against Kimbrough and Corey, but not against Young.

Judgment was accordingly entered.

Subsequently the judgment above was set aside and the following judgment was entered which:

1. As to Count I, entered a judgment notwithstanding the verdict in favor of Kimbrough, Corey and Young;

2. As to Count II, affirmed the judgment of liability for fraud against Kimbrough and Corey but ordered a new trial solely on the issue of damages for fraud.

This appeal comes from the foregoing, as follows:

1. By State Savings from the final judgment notwithstanding the verdict on Count I and by State Savings in the form of an interlocutory appeal with regard to the granting of a new trial on the issue of damages under Count II;

2. By Kimbrough and Corey from the judgment affirming the fraud in Count II;

3. By Young from the judgment in favor of Kimbrough and Corey and against Young in his cross-claim in Count I.

### I. FACTS

Kimbrough, Corey and Young were the principal officers and stockholders of Kauaian Development. Kimbrough and Corey were president and vice president-general counsel, respectively. At the inception of the dealings between the parties to this case, Kimbrough and Corey met with a representative of State Savings to work out the figures for the proposed loan. After many negotiations State Savings agreed to a mortgage loan of 65% of the appraised value of the land and construction costs.

Pursuant to this arrangement Corey submitted to State Savings a financial statement of a proposed hotel condominium which included a specific cost for construction in the amount of $761,500.00. This statement was signed by Corey as vice president of Kauaian Development. Kauaian Development already had a contract in existence with the contractor, Better Built Hawaii, Ltd. (hereinafter Better Built), for construction of the hotel condominium at a cost price of $600,000.00, less than that represented to State Savings. This previously made contract between Kauaian De-

velopment and Better Built was evidenced by a letter agreement signed by the president of Better Built and Kimbrough for Kauaian Development. The essence of this agreement provided that the higher construction cost figure given to State Savings was to be considered as between Better Built and Kauaian Development "for financing purposes only", and was not to modify their existing agreement at the lower cost figure.

Subsequently State Savings was furnished, at its request, a copy of what was purported to be the contract between Better Built and Kauaian Development. It was signed by the president of Better Built and by Kimbrough as president of Kauaian Development. It included the same higher construction cost figure previously submitted by Corey to State Savings.

The closing documents for the mortgage loan in the amount of $857,000.00, based in part upon the higher construction figure represented to State Savings, were signed and formally executed. During the process of preparing for the closing it became apparent that the total amount of the loan as proposed would not cover the total expected cost to finish the construction, which had already started. In order to assure that this deficiency would be met and that there would be sufficient funds to complete the construction, State Savings accepted Kimbrough's, Corey's and Young's personal guarantee that any such funds would be paid by them. In part this agreement reads as follows:

> This statement shows an additional amount to be received from the development company to provide for all loan disbursements in the amount of $46,485.50. Although the loan is made to the corporation, of which the undersigned are officers, it is hereby agreed that the undersigned officers pledge their personal liability for the above amount of money, or any other amount of money that may be necessary, to complete the proposed Hyatt House development on the island of Kauai. We guaranty

that this money will be available for the payment of expenses to complete this project as originally proposed in the mortgaging agreements.

This agreement was signed by Kimbrough, Corey and Young.

Under the mortgage loan arrangement, construction progress payments were to be paid to Kauaian Development rather than Better Built as requested by defendants. Eventually all the progress payments under the loan were made, the construction was completed and the hotel condominium started its operation.

Repayment of the mortgage loan became delinquent and State Savings instituted, in the fifth circuit court in Civil No. 636, a mortgage foreclosure proceeding against Kauaian Development and the individual unit owners. The court in said case ordered that the property be foreclosed and sold to pay the balance due on the mortgage and two mechanic's liens which were adjudged to have priority over the mortgage. The mechanic's liens totalled $28,506.70. The court ordered the property sold at public auction at an upset price of $1,051,200.80. This amount included the balance due on the mortgage, the mechanic's liens and the foreclosure expenses. There were no bidders at the upset price sale.

The court determined that the property should be sold with no upset price. At the second sale State Savings itself purchased the property for $913,000.00. This left a difference of $138,200.80 between the purchase price and the upset price.

The jury in the instant case, which is now on appeal, rendered a verdict of $28,506.70, the amount of the mechanic's liens, on Count I under the written guarantee agreement against defendants Kimbrough, Corey and Young. Under Count II for fraud, a verdict of $109,694.10 was rendered against defendants Kimbrough and Corey. These two fig-

ures total the $138,200.80 difference between the upset price and the purchase price.

## II. ISSUES

The questions before us that we consider necessary to answer are: (1) Whether the defense of res judicata is applicable to the present case; (2) Did the trial court err in setting aside the judgment on Count I and granting a judgment notwithstanding the verdict? (3) Did the trial court err when it failed to grant a judgment notwithstanding the verdict on Count II? (4) Did the trial court err in granting a new trial on the issue of damages for Count II? (5) Did the trial court err in denying defendant Young's motion for judgment notwithstanding the verdict or in the alternative for a new trial on his cross-claim against defendants Kimbrough and Corey with respect to Count I?

## III. RES JUDICATA

The essence of defendants' arguments on this issue is that the final judgment in the prior mortgage foreclosure action should act as a bar to the present action under the doctrine of res judicata. Their primary contention is that the lower court erred in failing to dismiss the complaint and in failing to direct a verdict on this issue.

This court in *Ellis v. Crockett*, 51 Haw. 45 (1969), at page 55, set forth the doctrine of res judicata as follows:

The doctrine of *res judicata* basically provides that "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." *In re Bishop Estate*, 36 Haw. 403, 416 (1943).

It is clear from the *Ellis* case that the doctrine of res judi-

cata primarily turns on those matters which might have been "properly litigated" in the first action. As such the question presented is whether the present claim should have been included in the mortgage foreclosure suit.

There was presented at trial conflicting evidence as to what point in time State Savings learned of the double contracting. Testimony was given indicating that State Savings' representative may have learned about the lower construction contract during his counsel's preparation for the foreclosure action. It is defendants' contention that even if State Savings were ignorant of the fact supporting the fraud claim in Count II, this ignorance was due to State Savings' own negligence. Defendants maintain that State Savings either was or should have been fully cognizant of the double contracting prior to the commencement of the foreclosure action. They cite numerous authorities providing that if a party's ignorance of a claim is the product of his own negligence in that he should have been aware of facts supporting it, then he is barred by res judicata from asserting his claim in a second action. *Guettel v. U.S.*, 95 F.2d 229, 232, *cert. denied*, 305 U.S. 603.

Defendants further rely heavily on this court's decision in the *Ellis* case, *supra*. They contend that our decision in that case "has already decided that in a mortgage foreclosure action, an action for fraud allegedly founded on the mortgage transaction *must* be litigated, or the right of action is lost". This construction by defendants of our holding in that case as a precedent for the decision in this case is grossly inaccurate. Initially it is evident that the factual situation in the instant case makes the *Ellis* case readily distinguishable on its face. In *Ellis* we held that the subsequent claim should have been raised as a compulsory counterclaim in the previous action. But of even more significance is the fact that the present defendants have misstated our use of the doctrine of res judicata as set forth in the *Ellis* case. It is apparent from State Savings' brief that they too have misconstrued our decision in *Ellis*.

In the *Ellis* holding, this court specifically differentiated between the doctrines of res judicata and collateral estoppel. As quoted from the *Ellis* case earlier in this opinion, res judicata "precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided". Quoting further from the *Ellis* case, page 55, "Collateral estoppel is an aspect of res judicata which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. *Yuen v. London Guarantee and Accident Co.*, 40 Haw. 213, 223 (1953); *Henderson v. Pence*, 50 Haw. 162, 163, 434 P.2d 309, 310 (1967)." Then we went on to say that it was collateral estoppel that was applicable in that case, not res judicata generally. "The claim before us today is clearly not the same claim for which relief was sought in the prior foreclosure case. . . . Also the legal consequences of a successful completion of the litigation would be different. Since this is a different claim, the only way the present plaintiff may be barred is through collateral estoppel. Applying the above described rules, the present plaintiffs are barred as to any claim they may assert against any of the defendants with respect to issues actually litigated between the persons who were parties in the foreclosure suit." *Ellis, supra* at 56-57. As such it is evident that collateral estoppel, not res judicata, was applied in the *Ellis* case, contrary to defendants' assertion.

Applying the above principles to the present case, defendants' defense of res judicata must fall. We need not reach the question whether the parties and subject matter in the present case are the same as those in the prior mortgage foreclosure action. The fact that plaintiff's damages were not known at the time of the mortgage foreclosure action is determinative of the res judicata issue. The present claim could not have been "properly litigated", as that term is used in the *Ellis* case, at the time of the mortgage foreclosure

action because at that time it was not known whether State Savings would suffer any damages from defendants' default on the mortgage. The damages were capable of being determined only after the mortgage was foreclosed and the property sold at a loss to the mortgagee, State Savings. Had the property been foreclosed at a gain, sufficient to cover the damages under both Counts I and II, State Savings would not have had a valid claim. As such the defense of res judicata is not applicable to the facts in the present case. The fact that State Savings may have known about the fraud when it brought the mortgage foreclosure action is not sufficient. It did not know the extent of its damages or even whether it would have any at that time.

#### IV. JUDGMENT NOTWITHSTANDING THE VERDICT ON COUNT I

The jury returned a verdict in favor of State Savings on Count I against defendants Kimbrough, Corey and Young for $28,506.70, an amount equal to the unpaid mechanic's liens. The trial court granted judgment to defendants notwithstanding the jury verdict. Count I relates to the written undertaking, a guarantee agreement, signed by all three defendants.

As to Count I, the jury was instructed in part as follows: "In construing the written undertaking . . . you may consider . . . all testimony adduced with regard to what the parties intended at the time the document was prepared and executed. . . . [I]f you find that the completion of the project as originally proposed in the mortgaging agreements was paid for in full, then you must return a verdict in favor of the defendants."

The trial court in granting judgment notwithstanding the verdict gave the following reasoning in part: "And the reason for granting the motion for a judgment notwithstanding the verdict is, as the court indicated previously, that the evidence shows affirmatively that all payments due [to the contractor from the developers] . . . had been made on the contract as amended, and we are talking about the $600,000

contract . . . and under the contract as amended, the contractor was paid in full."

The $600,000.00 construction contract to which the trial court referred is the lower costing contract brought out in the statement of facts concerning the double contracting by defendants. As stated previously, defendants represented to State Savings that the construction contract was for a higher figure, $761,500.00. Under the written guarantee agreement, defendants agreed to provide all funds in excess of the mortgage loan necessary "to complete this project as originally proposed in the mortgaging agreements". The trial court, using the $600,000.00 contract, found that the contractor had been paid in full and gave judgment notwithstanding the verdict. In doing so, the trial court substituted its judgment for the jury's and found that the $600,000.00 contract was part of the mortgaging agreements rather than the $761,500.00 contract that had been submitted to State Savings.

The amount of the verdict under Count I, $28,506.70, comes well within the balance between the $761,500.00 contract and the amount actually paid the contractor. Had the contractor received the full $761,500.00, as was represented to State Savings, it is reasonable to assume that the mechanic's liens would have been paid. Since it was the $761,500.00 contract that was represented to State Savings as being the true contract between developer and contractor, it was correct for the jury to take it into consideration under Count I. As such the trial court committed error in relying on the lesser contract in overturning the jury.

The jury had the written guarantee agreement, a copy of what was represented to State Savings as the construction contract, and testimony from all parties involved upon which to base its verdict. It has long been the law in this jurisdiction that verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support a jury's findings. *Ashford v. Thos. Cook & Son, Ltd.*, 52 Haw. 113, 123, 471 P.2d 530, 536 (1970); *Fernandez v. Hao,*

43 Haw. 335, 336 (1959); *Louis v. Victor*, 27 Haw. 262, 263 (1923). There was sufficient evidence for the jury to find for State Savings on Count I. As such the judgment granted by the trial court should be reversed as to Count I and the jury verdict reinstated.

## V. THE JURY VERDICT ON COUNT II

When the jury returned its verdict on Count II, defendants Kimbrough and Corey filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. Listed among the grounds were "that the evidence adduced by the plaintiff failed to support a claim upon which relief could be had" and that "the verdict of the jury was against the weight of the evidence". The trial court denied the motion. This court finds defendants' grounds without merit and affirms the action of the trial court.

The jury was properly instructed by the trial court as to all the elements that must be proven by State Savings in an action for fraud. The jury verdict is fully supported by all the documents that were entered in evidence, including those that constituted the mortgaging agreements. In addition there is the testimony of all parties involved, including the individual defendants and the president of the contracting company. More specifically, the jury had the testimony of State Savings' representative to the effect that among other things he relied on the $761,500.00 construction contract as represented to him in making the mortgage loan. There was substantial evidence to support the jury verdict. The trial court is thus affirmed in denying defendants' motion for the same reasons cited in upholding the jury verdict on Count I.

## VI. DAMAGES ON COUNT II

The question here presented is as follows: Did the trial court err in granting defendants Kimbrough's and Corey's motion for a new trial as to damages on Count II?

The trial court in granting the motion, believed that it

erred in failing to allow defendants to introduce evidence as to a subsequent resale of the property by State Savings to a third party after State Savings had purchased the property at the second foreclosure sale.

The facts show that State Savings' damages on Count II were determined in the following manner: The court, in the previous mortgage foreclosure suit, originally ordered the property sold at public auction at an upset price of $1,051,200.80. This amount included the balance due on the mortgage, the mechanic's liens and the foreclosure expenses. At the second sale State Savings bought the property for $913,000.00. This left a loss of $138,200.80 on the sale. State Savings, in the present case on appeal, recovered the amount of the mechanic's liens, $28,506.70, on Count I. The balance, $109,694.10, was the amount returned by the jury on Count II.

It is not disputed that the mortgage foreclosure sale itself was conducted properly under the law. The sale was conducted and confirmed by the court in that action. As such this court considers it irrelevant to the action at hand that State Savings itself was the buyer of the property at that sale. Concerning the issue of damages in the present case, the only fact resulting from the sale that is relevant is the amount of the proceeds from the foreclosure sale. State Savings' damages would certainly not be computed any differently had it not resold the property or had another party bought the property at the foreclosure sale. Therefore, the fact that State Savings subsequently sold the property has no bearing on this case and the facts surrounding this sale were properly disallowed.

State Savings confuses this issue by going into a lengthy discussion in its brief on the difference between the "benefit of the bargain" theory of computing damages for fraud and the "out of pocket" theory. It would have the court at this time adopt one theory or the other for this jurisdiction. Under the "benefit of the bargain" rule, State Savings would be entitled to have its mortgage note paid in full, that

is what it bargained for. Using the "out of pocket" theory, the loss is the deficiency under the mortgage note. In both instances the expenses of the foreclosure sale that were a portion of the upset price would be included in the damages computation. It is conceded by State Savings that in this case it makes no difference which theory is used, the monetary damages are the same.

The "benefit of the bargain" rule, as used in this context, is ordinarily applicable in those situations where the buyer of property is defrauded as to its value at the time of sale. *Louis Steinbaum Real Estate Co. v. Maltz*, 247 S.W.2d 652 (Mo. 1952). In such a situation the price of a subsequent resale is admitted to show the actual value of the property when fraudulently sold. It is evident that that situation is entirely different from the case at hand. Here we have a mortgagee who was defrauded not as to the value of the property but as to the value of a construction contract upon which the amount of the loan was determined. As such a sale of the property by anyone subsequent to the foreclosure sale when the damages were determined is completely irrelevant to the damage issue.

Some jurisdictions have taken the view that no strict rule should be adopted and have held that either the "benefit of the bargain" or the "out of pocket" rule should be applied depending on the rule most applicable to the case at hand. In such situations a flexible rule is used which would apply a different theory depending on the equities and proof available in each case. *Rice v. Price*, 340 Mass. 502, 164 N.E.2d 891 (1960); *Hunt v. Sherrill*, 195 Miss. 688, 15 So. 2d 426 (1943); *Zeliff v. Sabatino*, 15 N.J. 70, 104 A.2d 54 (1954); *Gnash v. Saari*, 44 Wash. 2d 312, 267 P.2d 674 (1954). We are of the opinion that this court should not bind itself to any one rule at this time.

### VII. CROSS-CLAIM ON COUNT I

Did the trial court err in denying Young's motion for judgment nothwithstanding the verdict or in the alternative

for a new trial on his cross-claim against Kimbrough and Corey with respect to Count I?

Young's cross-claim essentially states that if any judgment is obtained against him then the other defendants are liable to him for the full amount thereof since they handled all transactions with State Savings. The trial court gave the jury Young's requested instruction on Count I. It provided that if the jury found that Young executed the written undertaking based solely upon misrepresentations of either of the other defendants then the jury should find in favor of Young.

We have stated that verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings. More particularly, in relation to directed verdicts we have held in *Chambers v. City and County of Honolulu*, 48 Haw. 539, 541, 406 P.2d 380, 382 (1965), quoting from *Young v. Price*, 47 Haw, 309, 313, 388 P.2d 203, 206 (1963); *Young v. Price*, 48 Haw. 22, 24, 395 P.2d 365, 367 (1964), that: "[O]n motions for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed and if the evidence and inferences viewed in that manner are of such character that reasonable persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, then the motion should be denied and the issue should be submitted to the jury."

The facts were in dispute in this case as to the relationships among the defendants. Young testified that he did not know what was going on in reference to the mortgage negotiations and that the only reason he signed the written undertaking was because Kimbrough and Corey requested him to do so. Kimbrough and Corey testified, on the other hand, that Young was a full participant for the Kauaian Development during the procurement of the mortgage. In addition Young was a major stockholder and officer of Ka-

uaian Development at the time he signed the written undertaking. When the time came to close the loan, Kimbrough was hospitalized and Young played an integral part in the mechanics of that process. It is evident that, just as there was sufficient evidence for the jury to find in favor of Young on the fraud in Count II, there was sufficient evidence to find him liable on the written undertaking in Count I.

### VIII. ATTORNEY COREY'S CONDUCT

A substantial portion of the substance of this case involved an activity that could be considered fraudulent. Defendants herein misrepresented to a prospective mortgagee the true nature of the contract between developer and contractor upon which the mortgagee relied in determining the amount of the loan. It was suggested by defendants' counsel in oral argument that this type of activity, double contracting by developer between the contractor and the prospective mortgagee, is a commonplace procedure for the trade in this type of situation. No evidence of such practices having been accepted in the business community of Hawaii or any other jurisdiction was presented to this court. We feel it pertinent to specifically admonish the perpetrators of such conduct. In many instances a fraudulent act will overshadow contemporaneous acts that would, taken alone, have been considered legitimate activity.

In particular, this court questions the status of defendant Corey in this case. Young testified that he relied upon Corey as his attorney during the negotiation for the mortgage. We do not presume to characterize the relationship between Corey and Young in this transaction as attorney-client. And yet an attorney, as an officer of the court, owes a special duty to the public, his client and the bar to keep his conduct beyond reproach, whether it be in or outside the scope of his status as an attorney. A lawyer should avoid even the appearance of professional impropriety. Code of Professional

Responsibility, Canon 9. The conduct of attorney Corey in this case raises serious questions of impropriety.

## IX. CONCLUSION

The verdict of the jury as to all counts is reinstated and the order of the trial court for a new trial on the issue of damages is reversed. Remanded for entry of judgment consistent with this opinion.

*James S. Campbell* (*Peter Chi-Ping Char* with him on the briefs, *Cades, Schutte, Fleming & Wright* of counsel) for plaintiff-appellee, cross-appellant State Savings & Loan Association.

*Helen B. Ryan* (*Ryan & Ryan* of counsel) for defendants-appellants, cross-appellees Robert M. Kimbrough and Ralph E. Corey.

*Asa M. Akinaka* (*Padgett, Greeley, Marumoto & Akinaka* of counsel) for defendant-appellant, cross-appellee Wallace C. S. Young.