***FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER***

Electronically Filed
Supreme Court
SCAP-30686
15-MAR-2013
08:36 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

-–—o0o---

_____

EASTERN SAVINGS BANK, FSB,
Respondent/Plaintiff-Appellee,

vs.

EDUARDSON ESTEBAN and EMALYN P. GABRIEL-ESTEBAN,
Petitioners/Defendants-Appellants.

_____

SCAP-30686

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(ICA NO. 30686; CIV. NO. 09-1-0022)

March 15, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, AND MCKENNA, JJ.,
AND CIRCUIT JUDGE LEE, IN PLACE OF DUFFY, J., RECUSED

OPINION OF THE COURT BY MCKENNA, J.

## I.    Introduction

Defendants-Appellants Eduardson Esteban and Emalyn P. Gabriel-Esteban ("the Estebans"), borrowers and mortgagors under a residential mortgage loan, appeal the Circuit Court of the Fifth Circuit's ("circuit court") judgment confirming the

foreclosure sale of real property to Plaintiff-Appellee Eastern Savings Bank, FSB ("Eastern").[1]  This court accepted a discretionary transfer of the case.

The issue presented is whether Hawaiʻi res judicata principles prohibit a debtor from asserting federal Truth in Lending Act ("TILA") rescission rights after a foreclosure judgment has become final, even if TILA's three-year time limit for rescission has not expired.

For the reasons discussed below, we answer in the affirmative.  Therefore, we affirm the judgment of the circuit court confirming sale of the foreclosed property to Eastern, granting a writ of possession, and entering a deficiency judgment against the Estebans.

## II.  Background

This case arises out of a foreclosure[2] on a mortgage on property located on Kauaʻi ("the Property"), granted by the Estebans to Eastern as security for a $489,000 loan obtained on August 15, 2007.  The Estebans defaulted on the loan and, on

---

[1]    The Honorable Randal Valenciano presided.

[2]    "The term 'foreclosure' is defined as a legal proceeding to terminate a mortgagor's interest in property, instituted by the mortgagee either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property."  55 Am. Jur. 2d Mortgages § 573.

January 27, 2009, Eastern filed a state court action to foreclose the mortgage.

Although properly served, the Estebans failed to appear before the court and the clerk of the court entered their default. Eastern, thereafter, moved for summary judgment, interlocutory decree of foreclosure, and order of sale.

On April 24, 2009, the court entered judgment in favor of Eastern and against the Estebans, foreclosing on the mortgage ("Foreclosure Judgment"). The Estebans did not appeal the Foreclosure Judgment. On November 17, 2009, the foreclosure commissioner held a public auction to sell the Property. Eastern submitted the only bid, for $420,000. On December 14, 2009, Eastern filed a Motion for Confirmation of Sale, Writ of Possession, and Deficiency Judgment ("Motion for Confirmation of Sale"). The motion was scheduled for hearing on April 22, 2010.

On April 22, 2010, the Estebans mailed Eastern a letter stating they were exercising their alleged right to rescind the residential mortgage transaction "based on numerous federal Truth-in-Lending Act violations, including in part (1) the failure to deliver to each of them at closing any copies of notices of their right to cancel, [] (2) instead funding their loan based upon an unlawfully inadequate and contrived so-called hardship waiver of their right to cancel, and (3) the failure to

3

provide them with accurate good faith disclosures." Four hours before the confirmation hearing, the Estebans filed a complaint against Eastern in the United States District Court for the District of Hawaiʻi (Civ. No. 10-00234-HG-LEK), seeking a declaratory judgment that the promissory note and mortgage had been timely cancelled pursuant to TILA prior to any sale or dispositive state court judgment.

On May 3, 2010, the Estebans submitted a brief opposing the Motion for Confirmation of Sale and urging the circuit court to await disposition of the federal case before confirming the sale. They argued that their federal TILA case against Eastern was not barred by res judicata principles and that they had timely exercised their rescission rights by filing their federal claim prior to the expiration of TILA's three-year deadline and before entry of the state court's final confirmation of sale.[3]

The circuit court took judicial notice of the Estebans' pending federal case, but declined to stay confirmation of the foreclosure sale in the meantime. On May 20, 2010, the circuit court held a hearing on the Motion for Confirmation of Sale.

---

[3] In opposing confirmation of sale, the Estebans argued that "[t]he question before this court . . . is . . . to determine whether in fact the Estebans' exercise of such consumer rights has been timely to the point where this Court must await the judgment thereon of the United States District Court before confirming the pending self-sale to [Eastern]."

4

Citing Albano v. Norwest Financial Hawaiʻi, Inc., 24 F.3d 1061, 1064 (9th Cir. 2001), Eastern argued that a judgment of foreclosure had been entered on April 24, 2009, the Estebans had not appealed that judgment and, therefore, the Estebans' TILA claim was barred by res judicata. The Estebans, on the other hand, argued that the state court was not bound by the Ninth Circuit's interpretation of Hawaiʻi law in Albano and maintained that a borrower retains the right to rescind a mortgage prior to confirmation of sale despite a judgment of foreclosure. They contended that Albano was unpersuasive because the Ninth Circuit's interpretation of Hawaiʻi res judicata law erroneously relied on Pacific Concrete Federal Credit Union v. Kauanoe, 62 Haw. 334, 614 P.3d 936 (1980), a case that did not involve a foreclosure action. In addition, they claimed that Albano conflicted with federal decisions from other states. Finally, they suggested that Albano should not be followed because it misread Hawaiʻi res judicata law.

The circuit court acknowledged that Albano was not binding on state courts but agreed with the Ninth Circuit's analysis of Hawaiʻi law and concluded that the Estebans' pending TILA case did not bar confirmation of the sale of the Property. On July 15, 2010, the court entered a judgment confirming sale of

5

the Property to Eastern, granting a writ of possession, and entering a deficiency judgment against the Estebans.[4]

The Estebans filed a notice of appeal on August 16, 2010. They posed the following question on appeal:

> As a matter of Hawaii res judicata law, during judicial foreclosures pending sale confirmation, does a Hawaii borrower lose his or her federal Truth-in-Lending Act right to rescind a mortgage loan refinancing transaction within three years of loan consummation where there otherwise may exist TILA violations and a timely notice of cancellation is sent to lenders up to and until final judicial confirmation, simply because of a prior entry of a decree of foreclosure, whether appealed or not, and simply because of the occurrence of a prior nonbinding auction sale?

This court accepted a discretionary transfer of the appeal pursuant to HRS § 602-58(b)(1).

---

[4] One week later, on July 22, 2010, the federal district court granted Eastern's motion to dismiss the Estebans' TILA case and denied the Estebans' countermotion to certify a legal question to the Hawaiʻi Supreme Court. Citing Pacific Concrete, 62 Haw. at 341, 614 P.2d at 940, and Albano, 244 F.3d at 1064, the district court held that there was clear, controlling precedent as to Hawaiʻi law. The court concluded that the Estebans' TILA rescission claim arose out of the same transaction as the state foreclosure action, the validity of the mortgage was decided in the prior foreclosure proceeding, and the TILA claim was therefore barred by the state court's final judgment of foreclosure. The court explained, "As was true in Albano, the [Estebans] here could have raised their TILA claim in the state foreclosure proceedings. Doing so would have provided [them] with an affirmative defense and precluded foreclosure if [their] claims were found to be meritorious. Plaintiffs failed to raise the TILA claim."

In addressing an alternative argument by Eastern, the court noted that the Estebans were essentially appealing the state Foreclosure Judgment through their TILA rescission claim. Because the Rooker-Feldman doctrine, enunciated in Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), deprives federal district courts of jurisdiction to hear appeals from state court judgments, the court concluded that the TILA claim was barred.

The district court denied the Estebans' counter-motion to certify a legal question to this court and held that the case did not present a novel issue for which there was no clear, controlling precedent.

The Estebans did not contest or otherwise appeal the district court's order granting Eastern's motion to dismiss and denying their counter-motion to certify a legal question to this court.

6

## III. Standard of Review

Application of res judicata is a question of law. <u>See Exotics Hawaiʻi-Kona, Inc. v. E.I. Dupont De Nemours & Co.</u>, 104 Hawaiʻi 358, 364, 90 P.3d 250, 256 (2004). Questions of law are reviewed de novo under the right/wrong standard. <u>Best Place, Inc. v. Penn Am. Ins. Co.</u>, 82 Hawaiʻi 120, 123, 920 P.2d 334, 337 (1996).

## IV. Discussion

The issue presented is whether Hawaiʻi res judicata principles prohibit a debtor from asserting federal TILA rescission rights[5] after a Foreclosure Judgment has become final, even if TILA's three-year time limit for rescission has not expired.

---

[5] Rescission developed as an equitable remedy and has the effect of cancelling, abrogating, or disaffirming a contract; it restores all parties to their status quo positions prior to the agreement. <u>Leslie v. Estate of Tavares</u>, 93 Hawaiʻi 1, 994 P.2d 1047 (2000). Over time, the term "rescission" has been used to refer to a variety of remedies with different consequences:

> Plainly stated, the remedy of rescission is an avoidance of a transaction, the extinguishment of an agreement such that in contemplation of law it never existed, even for the purpose of being broken. In application, however, the term rescission carries with it a confusion of vocabulary. The meaning of rescission varies depending on what caused the contract to end. For instance, if a contract ends because of a party's breach, damages are still owed. However, if a contract is ended because of mistake, duress, or incapacity, then only a right of restitution exists. If a contract ends by mutual agreement, then the remedies available are shaped by the terms of the agreement.

<u>Bischoff v. Cook</u>, 118 Hawaiʻi 154, 160, 185 P.3d 902, 908 (App. 2008) (internal citations and quotation marks omitted). TILA rescission rights are statutorily prescribed.

## A.    TILA Rescission Rights

TILA, as contained in Title I of the Consumer Credit Protection Act, provides consumers with various protections "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).

One protection available to consumers under TILA is a right of rescission in any consumer credit transaction in which a security interest is acquired in property used as the principal dwelling of the person to whom credit is extended; this "buyer's remorse" provision extends for three business days following consummation of the transaction or delivery of the relevant disclosures to the consumer.[6]  15 U.S.C. § 1635(a).

TILA requires that creditors clearly and conspicuously disclose information regarding the right to rescind and provide borrowers with appropriate forms to exercise this right.  15 U.S.C. § 1635(a).  Where a creditor fails to make the required

---

[6]    Eastern also argued before the federal district court that the Estebans had failed to state a TILA claim because the Property at issue was not their principal dwelling.  While the Estebans' complaint in the federal case stated that the Property was their principal dwelling, the attached loan application stated the Property would be used for investment purposes and their primary residence was on Oʻahu.  The federal district court found it unnecessary to decide whether the Property was in fact the Estebans' principal dwelling. Based on our holding that res judicata prohibits the assertion of TILA rescission rights, we likewise do not find it necessary to address this issue.

disclosures under TILA, the act extends the borrower's right to rescind for three years after consummation of the subject transaction.[7]  15 U.S.C. § 1635(f).

The Estebans' attempt to rescind occurred within this three-year time limit, but after a state court judgment foreclosing on the subject Property.  In order to determine

---

[7]    Regulation Z, issued by the Federal Reserve Board, implements TILA's requirements and describes the right of rescission as follows:
> The consumer may exercise the right to rescind until midnight of the third business day following the occurrence described in paragraph (a)(1) of this section that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last.  If the required notice and material disclosures are not delivered, the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. . . .

12 C.F.R. § 226.15(a)(3) (emphasis added).

This court previously described the contours of TILA's requirements and remedies in Hawaii Community Federal Credit Union v. Keka, 94 Hawaiʻi 213, 11 P.3d 1 (2000), where we explained:
> [] TILA requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.  Failure to satisfy TILA subjects a lender to criminal penalties for noncompliance, . . . as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures . . . .
>
> Going beyond these rights to damages, TILA also authorizes a borrower whose loan is secured with his principal dwelling, and who has been denied the requisite disclosures, to rescind the loan transaction entirely, until midnight of the third day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later.  TILA provides, however, that the borrower's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, even if the required disclosures have never been made.  TILA gives a borrower no express permission to assert the right of rescission as an affirmative defense after the expiration of the 3-year period.

94 Hawaiʻi at 223, 11 P.3d at 11 (internal citations, quotation marks, and brackets omitted).

whether the circuit court erred in confirming sale of the Property, this court must determine whether Hawaiʻi res judicata law barred the Estebans from asserting a rescission claim after the circuit court's Foreclosure Judgment became final.

**B.    Res Judicata Principles**

Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are doctrines that limit a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy.  <u>Dorrance v. Lee</u>, 90 Hawaiʻi 143, 148-49, 976 P.2d 904, 909-10 (1999).[8]  Claim preclusion and issue preclusion are, however, separate doctrines that involve distinct questions of law.  Claim preclusion prohibits the parties or their privies from relitigating a previously adjudicated cause of action; issue preclusion, by contrast, prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action.  <u>Bremer v. Weeks</u>, 104 Hawaiʻi 43, 54, 85 P.3d 150, 161 (2004) (internal brackets, citations, emphases, and quotation marks omitted).

This court explained the purposes of the res judicata doctrine in <u>Kauhane v. Acutron Co., Inc.</u>:

---

[8]    At times, Hawaiʻi appellate cases may have conflated the two doctrines.  <u>See</u> R. Endo, <u>Res Judicata and Collateral Estoppel in Hawaii: One of These Things is Not Like The Other</u>, 3 HAW. B.J. No. 13, 1 (1999).

> According to the doctrine of res judicata, the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the claims which were actually litigated in the first action, but also of all grounds of claim . . . which might have been properly litigated in the first action but were not litigated or decided.
>
> The purpose of the doctrine of res judicata is to prevent a multiplicity of suits and to provide a limit to litigation. It serves to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. The res judicata doctrine thus furthers the interests of litigants, the judicial system and society by bringing an end to litigation where matters have already been tried and decided on the merits. It is a rule of fundamental and substantial justice, of public policy and private peace.
>
> The doctrine therefore permits every litigant to have an opportunity to try his case on the merits; but it also requires that he be limited to one such opportunity. Unsatisfied litigants have a remedy: they can appeal through available channels. But they cannot, even if the first suit may appear to have been decided wrongly, file new suits.

71 Haw. 458, 463-64, 795 P.2d 276, 278-79 (1990) (internal brackets, citations, and quotation marks omitted).

We further explained in <u>Bremer</u>:

> Claim preclusion . . . prohibits a party from relitigating a previously adjudicated cause of action. Moreover, the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and <u>precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided</u>. The party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question.

104 Hawaiʻi at 54, 85 P.3d at 161 (emphasis added).

It is important to note that res judicata precludes not only the relitigation of claims or defenses that were litigated in a previous lawsuit, but also of all claims and defenses that

11

might have been properly litigated, but were not litigated or decided. This part of the res judicata doctrine is reflected in the Restatement (Second) of Judgments, Sections 18 and 22:

> **§ 18. Judgment For Plaintiff -- The General Rule Of Merger**
>
> When a valid and final personal judgment is rendered in favor of the plaintiff:
>
> (1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and
>
> (2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.
>
> **§ 22. Effect Of Failure To Interpose Counterclaim**
>
> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
>
> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
>
>> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
>>
>> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

## C. The Estebans' TILA Rescission Rights are Barred by Res Judicata Principles

Eastern asserts that the Estebans' TILA rescission claim is barred by res judicata.[9]

---

[9] This court previously addressed the effect of a foreclosure judgment on a subsequent suit for common law rescission applying principles of collateral estoppel, or issue preclusion, in Ellis v. Crockett, 51 Haw. 45, 451 P.2d 814 (1969). In Ellis, sellers of real property obtained summary judgment in a mortgage foreclosure lawsuit. 51 Haw. at 48, 451 P.2d at 818. In a subsequent suit, purchasers sued various parties for allegedly failing to

(continued...)

To reiterate, the party asserting claim preclusion has the burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim presented in the action in question is identical to the one decided in the original suit, or to a claim or defense that might have been properly litigated in the first action but was not litigated or decided. Bremer, 104 Hawaiʻi at 54, 85 P.3d at 161.

Applying these requirements to the facts at hand, we conclude that the Estebans' TILA rescission claims are barred by res judicata principles.

---

(...continued)
disclose certain information when they demanded full payment of the principal amount pursuant to an acceleration clause in the agreement. 51 Haw. at 47-48, 451 P.2d at 818. The trial court dismissed the suit for failure to state a claim, and purchasers appealed. 51 Haw. at 49, 451 P.2d at 819.

This court affirmed the dismissal, holding, inter alia, that various claims brought by purchasers, including a claim for rescission of the underlying agreement, were barred by the doctrine of collateral estoppel. 51 Haw. at 56-58, 451 P.2d at 822-24. We noted that the subsequent claim for fraud was clearly distinct from the claim raised in the foreclosure case, the parties were cast in different roles as plaintiff and defendant, and the legal consequence of each case was different. 51 Haw. at 56, 451 P.2d at 822. Nonetheless, we held that collateral estoppel applied because all issues regarding the validity of the mortgage instrument had been decided when the court granted foreclosure in the prior case. 51 Haw. at 57, 451 P.2d at 823. We concluded, "The rescission action is barred because the court granted the foreclosure in the prior suit, thereby deciding all issues relating to the mortgage instrument in favor of [the defendants-vendors]. The issue underlying that judgment may not be collaterally attacked." 51 Haw. at 57, 451 P.2d at 823 (emphasis added).

Although it could be argued that the Estebans' claims may also be precluded by issue preclusion based on Ellis and Section 27 of the Restatement (Second) of Judgments ("When an issue of fact . . . is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim[]"), because the parties have argued this case based on res judicata principles, we decide this case on res judicata grounds.

First, under Hawaiʻi law, there was a final judgment on the merits when the time to appeal the Foreclosure Judgment expired. See Glover, Ltd. v. Fong, 42 Haw. 560, 574 (1958).[10] Moreover, under Hawaiʻi law, res judicata principles apply to default judgments. Fuller v. Pac. Med. Collections, Inc., 78 Hawaiʻi 213, 219, 891 P.2d 300, 306 (App. 1995).

Second, both the Estebans and Eastern were parties to the prior foreclosure proceeding.

Third, a TILA rescission claim would have been properly litigated in the foreclosure action, whether as a counterclaim or as an affirmative defense.

In Pacific Concrete, 62 Haw. at 342, 614 P.2d at 941, we recognized that TILA violations may be raised in a counterclaim. In that case, a creditor sued a debtor for the outstanding balance owed on two loans, and the debtor counterclaimed, alleging that the creditor failed to satisfy TILA's disclosure requirements. 62 Haw. at 335, 614 P.2d at 934. The lender asserted that the counterclaim was barred because it

_____

[10]    It is well established that under Hawaiʻi law, "foreclosure cases are bifurcated into two separately appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree; and (2) all other orders." Sec. Pac. Mortg. Corp. v. Miller, 71 Haw. 65, 70, 783 P.2d 855, 857 (1989) (holding that a judgment of foreclosure and order of sale is final even though matters incident to its administration remain, and a party seeking to challenge a foreclosure judgment must do so within the thirty-day period following entry of the decree). The Estebans contend that they may exercise their right to rescind up to and until the court's confirmation of sale. However, foreclosure has the legal effect of terminating a mortgagor's interest in the subject property, and therefore, a foreclosure judgment constitutes a final judgment. See Ellis, 51 Haw. at 57, 451 P.2d at 823.

14

was not brought within one year, as allegedly required by 15.U.S.C. § 1640(e).[11]  Id.

This court reasoned that the debtor's claims were "in the nature of a recoupment defense," which would diminish the creditor's recovery, and the alleged TILA violations "arose out of the same loan transaction as [the creditor's] suit[.]"  62 Haw. at 341, 614 P.2d at 940 (emphasis added).  We noted that "TILA seeks to protect the consumer by ensuring full disclosure of credit cost" and concluded that "[d]enying debtors their counterclaims in this situation could work an injustice and undercut the aim of the TILA."[12]  62 Haw. at 342, 614 P.2d at 941 (noting that consumers are typically unaware of their rights under TILA until a creditor files suit to collect on the outstanding loan).  We recognized that a claim alleging

---

[11]     Section 1640 of TILA governs "Civil liability."  At the time of our decision in Pacific Concrete, subsection (e) provided:
> (e) Any action under this section may be brought . . . within one year from the date of the occurrence of the violation.

15 U.S.C. §1640(e) has since been amended, and it now specifically contains the following sentence: "This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."

[12]     In allowing the debtor to allege a TILA counterclaim, we explained:
> Section 1640(e), the statute of limitations provision of the TILA serves to further enforcement of the Act's civil liability provisions by ensuring the prompt bringing of suits.  Deterrence of lenders' violations rather than compensation of borrowers is the goal.  Thus, allowing a borrower's claim under the Act as a defense to the lender's original suit is in keeping with this overall scheme.

62 Haw. at 343, 614 P.2d at 942.

15

violations of TILA's disclosure requirements arose out of the same transaction as a suit seeking enforcement of the underlying loan agreement.  Id.  Accordingly, we acknowledged that the debtor's TILA claim could be asserted as a counterclaim against the lender.  Id.

In Beach v. Ocwen Federal Bank, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), the United States Supreme Court alluded to the possibility of asserting the TILA rescission right under 15 U.S.C. § 1635 as an affirmative or other defense.  The question presented in the case was "whether a borrower may assert this right to rescind as an affirmative defense in a collection action brought by the lender more than three years after the consummation of the transaction."  523 U.S. at 411, 118 S.Ct. at 1409.[13]  The Court held that TILA rescission rights could not be asserted more than three years after consummation of the

---

[13]    Eastern asserts that a TILA rescission claim is a compulsory counterclaim, which the Estebans failed to raise in the foreclosure proceeding.  The Estebans contend that it is a permissive counterclaim and that the Albano court, discussed further in Section IV(D), infra, misread Hawaiʻi law regarding compulsory counterclaims.  However, the Ninth Circuit in Albano did not characterize a TILA rescission claim as a compulsory counterclaim; instead, it deemed it a "defense that would have ineluctably precluded foreclosure if the Albanos' claims are meritorious."  244 F.3d at 1064.
      Under Hawaiʻi law, a counterclaim is compulsory if there is a logical relation between the original claim and the counterclaim—i.e., it arises out of the same aggregate of operative facts as the original claim.  See Hawaiʻi Rules of Civil Procedure Rule 13(a).  If a defendant fails to assert a compulsory counterclaim, he is precluded from asserting it against the plaintiff in a subsequent action.  Booth v. Lewis, 8 Haw. App. 249, 252, 798 P.2d 447, 449 (1990).
      We decide this case on res judicata grounds, and do not decide whether a TILA rescission claim is a compulsory counterclaim, a permissive counterclaim, an affirmative defense, or some other type of defense.

transaction, but did not question the propriety of defensively asserting such rights, stating: "We respect Congress's manifest intent by concluding that the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run."  523 U.S. at 415, 118 S.Ct. at 1413.  After Beach, Hawaiʻi appellate decisions have also referred to the TILA rescission right as an affirmative defense.  Hawaii Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 223, 11 P.3d 1, 11 (2000) ("[TILA] gives a borrower no express permission to assert the right of rescission as an affirmative defense after the expiration of the 3-year period."); accord, Ocwen Fed. Bank, FSB v. Russell, 99 Hawaiʻi 173, 188, 53 P.3d 312, 326 (2002).

Accordingly, TILA rescission rights could have been raised by the Estebans in the foreclosure case, whether as a counterclaim or as an affirmative or other defense.

We hold that under Hawaiʻi res judicata principles, a debtor is prohibited from asserting alleged TILA violations in an attempt to rescind a residential mortgage transaction after a foreclosure judgment has become final, despite the rescission attempt being within the three-year time limit provided by TILA.[14]

---

[14]  In any event, as Eastern correctly asserts, the Estebans failed to appeal the July 22, 2010 Judgment of the U.S. District Court in their federal TILA case (Civ. No. 10-00234-HG-LEK).  That decision is final and preclusive of the claim that the Estebans now contend warrants reversal of the circuit court's judgment confirming sale of the Property.  See Robi v. Five Platters, Inc., 838 F.2d 318, 327 (9th Cir. 1988) (holding that a final judgment of a
(continued...)

D.    **The Ninth Circuit Correctly Construed the Effect of Controlling Hawaiʻi Law, and Other Cases Cited by the Estebans Are Distinguishable**

The circuit court relied on the Ninth Circuit's decision in Albano, which it deemed persuasive.  Based on our reasoning above, Albano properly concluded that under Hawaiʻi law, a final foreclosure judgment precludes a mortgagor from subsequently bringing a TILA rescission claim.  244 F.3d at 1064. In addition, cases from other jurisdictions are not controlling; and the cases cited by the Estebans are distinguishable.

For example, the first two cases cited by the Estebans, Smith v. Wells Fargo Credit Corp., 713 F. Supp. 354 (D. Ariz. 1989), and Laubach v. Fidelity Consumer Discount Co., 77 B.R. 483 (E.D. Pa. 1987), did not involve foreclosure proceedings; the courts simply held that a debtor's right of rescission under TILA was not barred by an earlier action in which the borrower asserted a claim based on TILA disclosure violations.  In re Apaydin, 201 B.R. 716 (E.D. Pa. 1996), is also distinguishable because it held that, under Pennsylvania law, a TILA claim could not be raised as a counterclaim in a mortgage foreclosure action; as discussed above, this contrasts with the import of our decisions in Pacific Concrete, 62 Haw. at 342, 614 P.2d at 941, and Ellis, 51 Haw. at 57, 451 P.2d at 823.  Finally, In re

_____

(...continued)
federal district court is final for purposes of res judicata even if an appeal is pending), cited in Wong v. Cayetano, 111 Hawaiʻi 462, 477, 143 P.3d 1, 16 (2006).

18

Walker, 232 B.R. 725 (N.D. Ill. 1999), is factually distinguishable because the debtor retained an equitable redemption right after the state court entered its foreclosure judgment.

The Estebans provide no other support for their contention that "nearly every federal District Court and every Bankruptcy Court that has examined that issue has held, contrary to the Albano panel, that the federal TILA rescission right survives a foreclosure judgment." Therefore, we conclude that their argument is without merit.

## V. Conclusion

For the reasons stated above, the circuit court's judgment confirming sale of the Property to Eastern, granting a writ of possession, and entering a deficiency judgment against the Estebans is affirmed.

| | |
|---|---|
| Gary Victor Dubin and Frederick J. Arensmeyer for petitioners | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Francis P. Hogan and Gary P. Quiming for respondent | /s/ Simeon R. Acoba, Jr. |
| | /s/ Sabrina S. McKenna |
| | /s/ Randal K.O. Lee |

