**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000097
30-OCT-2024
07:57 AM
Dkt. 57 SO**

NO. CAAP-21-0000097

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

NAHO YAMAGUCHI, Plaintiff-Appellant,
v.
TITLE GUARANTY ESCROW SERVICES, INC., a Hawaii corporation,
Defendant/Crossclaimant/Third-Party Plaintiff-Appellee,
and
MARTELL CAPITAL GROUP, LLC doing business as IRONGATE; THE
BLACKSTONE GROUP, L.P., a Delaware Limited Partnership,
Defendants/Cross-claim Defendants-Appellees,
and
PACREP LLC, a Delaware limited liability company,
Third-Party Defendant,
and
JOHN DOES 1-20; JANE DOES 1-20; DOE PARTNERSHIPS 1-20; DOE
CORPORATIONS 1-20; DOE GOVERNMENT ENTITIES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC181000539)

**SUMMARY DISPOSITION ORDER**
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

Naho **Yamaguchi** appeals from the January 25, 2022
**Amended Final Judgment** for **Title Guaranty** Escrow Services, Inc.
entered by the Circuit Court of the First Circuit.[1]  She
challenges the January 13, 2021 orders granting Title Guaranty's
motion for summary judgment and denying her motion for partial
summary judgment.  We vacate the Amended Final Judgment, vacate

---

[1]        The Honorable James H. Ashford presided.

in part the order granting Title Guaranty's motion for summary judgment, and remand.

**Pacrep** LLC was developing a residential condominium **Project** in Waikīkī. On February 1, 2013, Title Guaranty and Pacrep executed an **Escrow Agreement** for the Project. Title Guaranty agreed to receive money from condominium buyers and disburse the funds according to the Escrow Agreement. Title Guaranty was not a party to the contracts between Pacrep and the condominium buyers. Title Guaranty was thus an *escrow depository* under Hawaii Revised Statutes (**HRS**) § 449-1 (2013).

On September 14, 2013, in Japan, Yamaguchi signed a **Sales Contract** to buy a unit in the Project for $1,182,800. Yamaguchi had to make a series of payments to escrow to satisfy her obligations under the Sales Contract. Yamaguchi paid $592,790.43 into escrow over a two-year period. She wasn't able to make the closing payment and defaulted on the Sales Contract. Section D of the Sales Contract provided:

> 38. SELLER'S REMEDIES UPON DEFAULT BY PURCHASER. IN THE EVENT PURCHASER SHALL [default under the Sales Contract] SELLER SHALL BE ENTITLED TO . . . TERMINATION OF THIS SALES CONTRACT UPON WRITTEN NOTICE TO PURCHASER, WHEREUPON SELLER SHALL BE PAID THE DEPOSIT, AND ALL ACCRUED INTEREST, AS FIXED AND FULL LIQUIDATED DAMAGES. . . . NOTWITHSTANDING THE FOREGOING, IF PURCHASER [defaults under the Sales Contract] AFTER FIFTEEN PERCENT (15%) OF THE PURCHASE PRICE HAS BEEN PAID BY PURCHASER . . . SELLER SHALL REFUND TO PURCHASER ANY AMOUNT THAT REMAINS AFTER SUBTRACTING . . . FIFTEEN PERCENT (15%) OF THE PURCHASE PRICE OF THE UNIT[.]

Pacrep notified Yamaguchi of her default by letter dated February 2, 2016. Yamaguchi did not remedy her default.

By letter dated March 7, 2016, Pacrep told Yamaguchi it was terminating her Sales Contract. The letter stated:

> Because you failed to timely remedy the default, you are hereby notified that Seller has elected to exercise its right, pursuant to Section D.38 of the Sales Contract, to terminate the Sales Contract and retain **fifteen percent (15%) of the Total Purchase Price** as liquidated damages.
>
> By copy of this letter, we are hereby notifying Title Guaranty Escrow Services, Inc. to cancel escrow and to release said funds and accrued interest to Seller.

(Emphasis added.)

By letter dated March 25, 2016, Pacrep again told Yamaguchi it was terminating her Sales Contract.  But that letter stated:

> Because you failed to timely remedy the default, you are hereby notified that Seller has elected to exercise its right, pursuant to Section D.38 of the Sales Contract, to terminate the Sales Contract and retain ***all deposits*** pursuant to the Sales Contract.
>
> By copy of this letter, we are hereby notifying Title Guaranty Escrow Services, Inc. to cancel escrow and to release said funds and accrued interest to Seller.

(Emphasis added.)

According to Title Guaranty's senior project officer Janet Nelson:

> 8.   After receiving Pacrep's certified written termination of the Sales Contract due to Ms. Yamaguchi's default, per Section 12 of the Escrow Agreement, the deposits are treated as Pacrep's and [Title Guaranty] wired the remaining deposited monies to Pacrep on April 6, 2016.

Section 12 of the Escrow Agreement provided, in relevant part:

> If [Pacrep] subsequently certifies in writing to [Title Guaranty] that [Pacrep] has terminated the sales contract in accordance with the terms thereof and provides to [Title Guaranty] copies of all such notices of termination and proof of receipt sent to the purchaser, [Title Guaranty] shall thereafter treat all funds of the purchaser paid on account of such purchaser's sales contract as funds of [Pacrep] and not as funds of the purchaser.  Thereafter, such funds shall be free of the escrow established by this Agreement and shall be held by [Title Guaranty] for the account of [Pacrep].  Upon written request by [Pacrep], [Title Guaranty] shall pay such funds to [Pacrep], less any escrow cancellation fee.

By letter to Pacrep dated April 7, 2016 (the day after Title Guaranty disbursed the funds), Yamaguchi's attorney asserted Yamaguchi's right to rescind the Sales Contract, stated the Sales Contract was "void in violation of Japanese Consumer laws[,]" and demanded that Pacrep "immediately instruct [Title

Guaranty] to release the funds to [Yamaguchi] or return the money to her if [Title Guaranty] had released the funds to you." A copy of the letter was faxed to Title Guaranty.

By letter to Title Guaranty dated August 30, 2016, Yamaguchi's attorney asked about the status of Yamaguchi's funds. Title Guaranty responded by letter dated September 6, 2016, stating it had disbursed Yamaguchi's deposits to Pacrep on April 6, 2016.

Yamaguchi demanded arbitration against Pacrep. Pacrep made a counterdemand for arbitration. An **Arbitration Award** was made on May 18, 2018. The arbitrator found that Pacrep converted $412,750.90 of Yamaguchi's funds. Yamaguchi was awarded $412,750.90 in damages (net of $177,420.00 in liquidated damages awarded to Pacrep on its counterdemand), plus statutory damages and attorneys fees under HRS Chapter 480. A judgment on the Arbitration Award was entered on September 25, 2018. Pacrep satisfied the judgment.

Yamaguchi sued Title Guaranty on April 5, 2018. She filed a second amended complaint on October 7, 2019. It alleged conversion (Count I), breach of fiduciary duty (Count II), breach of contract (Count III), and unfair or deceptive acts and practices (Count IV). Title Guaranty moved for summary judgment. Yamaguchi moved for partial summary judgment on liability. The circuit court granted Title Guaranty's motion and denied Yamaguchi's motion. It also granted Title Guaranty's motion for attorneys fees and costs. A judgment was entered on February 12, 2021. Yamaguchi appealed. We temporarily remanded for entry of an appealable judgment. The Amended Final Judgment was entered on January 25, 2022.

Yamaguchi states 11 points of error challenging the orders granting Title Guaranty's motion for summary judgment, denying her motion for partial summary judgment, and granting Title Guaranty's motion for attorneys fees and costs. The argument in her opening brief does not follow her points of error. We address her arguments in the order made. Points not

4

argued are waived.  Hawaiʻi Rules of Appellate Procedure
Rule 28(b)(7).

We review a grant or denial of summary judgment de
novo.  Nozawa v. Operating Engineers Local Union No. 3, 142
Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018).  We review a grant
or denial of attorneys fees for abuse of discretion.  Kamaka v.
Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 105, 176 P.3d
91, 104 (2008).

**(1)**  Yamaguchi argues that Title Guaranty's "duty
extend[s] beyond [the] alleged Escrow Agreement that binds
Yamaguchi[.]"  Citing HRS § 449-16, she contends Title Guaranty
owed her a fiduciary duty, and "duties of fiduciary duties [sic]
are higher than that [sic] of a contract."

Under HRS § 449-16 (2013), Title Guaranty had "the
responsibility of a trustee for all moneys" it received from
Yamaguchi.  Title Guaranty received conflicting instructions from
Pacrep before it disbursed Yamaguchi's funds.  By letter dated
March 7, 2016, Pacrep instructed Title Guaranty to release
15 percent of Yamaguchi's purchase price.  By letter dated
March 25, 2016, Pacrep instructed Title Guaranty to release all
of Yamaguchi's funds.  Under one interpretation of paragraph D.38
of the Sales Contract,[2] Pacrep could keep all of a defaulting
buyer's deposit unless the buyer had paid more than 15 percent of
their unit's purchase price, in which case Pacrep could only keep
15 percent of the purchase price and had to refund the balance to
the buyer.  Under these circumstances, there was a genuine issue
of material fact about whether Title Guaranty breached its duty
as a trustee of Yamaguchi's funds when it released all of her
deposits to Pacrep.

---

[2]      Although "the construction and legal effect to be given a contract
is a question of law freely reviewable by an appellate court[,]" Title Guar.
Escrow Servs., Inc. v. Wailea Resort Co., 146 Hawaiʻi 34, 45, 456 P.3d 107,
118 (2019), the parties did not brief, and we do not decide, the legal effect
of paragraph D.38 of the Sales Agreement.  The arbitrator's construction of
paragraph D.38 of the Sales Agreement does not bind the circuit court on
remand.

The Escrow Agreement also provided:

> 15. <u>Binding Effect</u>. This Agreement shall . . . upon its acceptance by a given purchaser (which shall automatically occur upon Seller's execution of a sales contract), also be binding upon and ***inure to the benefit of such purchaser***, his or her heirs, personal representatives, devisees, successors and permitted assigns.

(Emphasis added.) Yamaguchi was thus an intended third-party beneficiary of the Escrow Agreement. There is a genuine issue of material fact about whether Title Guaranty breached its contractual duty to Yamaguchi by paying all of her deposits to Pacrep. The circuit court erred by granting Title Guaranty's motion for summary judgment on Count II (breach of fiduciary duty) and Count III (breach of contract) of Yamaguchi's second amended complaint; it did not err by denying Yamaguchi's motion for partial summary judgment.

**(2)** Yamaguchi argues the circuit court "erred in dismissing conspiracy to convert when it was res judicata[.]" Her second amended complaint did not allege a claim of civil conspiracy.

She also conflates two concepts by arguing that because the arbitrator found Pacrep converted $412,750.90 of her funds, Title Guaranty conspired with Pacrep as a matter of law because Title Guaranty disbursed her funds to Pacrep. Res judicata, or claim preclusion, "prohibits the parties or their privies from relitigating a previously adjudicated cause of action[.]" E. Sav. Bank, FSB v. Esteban, 129 Hawaiʻi 154, 158, 296 P.3d 1062, 1066 (2013). Claim preclusion doesn't apply here because Title Guaranty is not in privity with Pacrep, and the causes of action arbitrated by Yamaguchi and Pacrep are not being asserted here. Yamaguchi claimed that Pacrep breached the Sales Contract and converted her funds in excess of the liquidated damages to which Pacrep was entitled. Pacrep claimed that Yamaguchi breached the Sales Contract by failing to close the purchase of her unit, making her liable for damages. Title Guaranty was not a party to the Sales Contract or otherwise in privity with

6

Pacrep.  Yamaguchi makes no other argument to support her conversion claim.  The circuit court did not err by granting summary judgment for Title Guaranty on Count I (conversion) of Yamaguchi's second amended complaint.

**(3)**  Yamaguchi argues the circuit court "errored [sic] in failing to hold section 12 of [the] [E]scrow [A]greement is unenforceable, void, and/or voidable[,]" illegal, and unfair and deceptive.  Yamaguchi wasn't a party to the Escrow Agreement. Section 12 imposed no obligation on her.  Her argument about the enforceability of section 12 has no bearing on the merits of her claims against Title Guaranty.  The circuit court did not err by granting summary judgment for Title Guaranty on Count IV of Yamaguchi's second amended complaint.

**(4)**  We vacate the award of attorneys fees and costs because Title Guaranty is no longer the prevailing party.  Ass'n of Owners of Kalele Kai v. Yoshikawa, 149 Hawaiʻi 417, 421, 493 P.3d 939, 943 (2021).

For these reasons, the January 25, 2022 Amended Final Judgment is vacated, the January 13, 2021 order granting Title Guaranty's motion for summary judgment is vacated as to Yamaguchi's claims for breach of fiduciary duty (Count II) and breach of contract (Count III) only, and this case is remanded to the circuit court for further proceedings consistent with this summary disposition order.

DATED: Honolulu, Hawaiʻi, October 30, 2024.

On the briefs:

Junsuke Aaron Otsuka,
for Plaintiff-Appellant.

Charles A. Price,
for Defendant-Appellee
Title Guaranty Escrow
Services, Inc.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge